Opinion delivered November 30, 1931.

*Kent K. Jackson,* for appellant.

*Buzbee, Pugh & Harrison,* for appellee.

Mehaffy, J. The appellant, Clyde Hogan, Jr., begun work for the appellee, Bateman Contracting Company, which is a partnership composed of N. S. Bateman and Allen Bateman. The appellee was engaged in the construction of the White River bridge at Cotter, Arkansas. The appellant was 16 years of age. He begun work on the 27th day of May, 1930, and was injured on the 30th day of June, 1930. He alleges in his complaint that he was required and suffered to work seven days per week, ten hours per day every day, and some days ten and a half hours, and others eleven hours per day and more than fifty-four hours per week, contrary to law.

Appellant bases his right to recover on § 7091 of Crawford & Moses' Digest, which reads as follows: "No boy or girl under the age of 18 years shall be employed, permitted, or suffered to work in any occupation for more than six days in any week, or more than 54

hours in any week, nor more than 10 hours in any one day, or before the hour of six in the morning or after the hour of ten in the evening.

The undisputed proof shows that the appellant was 16 years of age; that he went to work for the appellee on the 27th day of May, 1930, working under a foreman named Williams, who has since died; that he worked at whatever they told him to do; part of his duty was to carry cement and help operate the mixer; that the first week beginning on the 27th day of May, he worked 70 hours; and that on some days he worked ten and a half hours, and on one day worked eleven hours; that the day he worked eleven hours he began work at seven in the morning, worked until 12:25, took five minutes off for dinner, and worked until six o'clock. His physical condition, when he entered the employment of appellee, was good; he had been examined so that he could go to the C. M. T. C., a training camp for boys.

He was injured about 10 or 11 o'clock on the 30th day of June, while lifting sacks of cement, weighing about 95 pounds. He was suffering with pains in his side, picked up the sack and threw it in, and, according to his testimony, something tore loose in his side. He started home, but was unable to go, and he was taken home in a car and put to bed. He suffered a great deal.

He was then taken to the hospital and treated by Dr. Rollins, who was the physician and surgeon for the appellee. He suffered great pain in the hospital, where he stayed for two or three days, and was then taken to Little Rock and operated on for hernia. He was in the hospital at Little Rock for about 18 or 19 days.

At the time of his injury he was earning $2.50 a day and was averaging 24 or 25 days a month. He was unable to do any labor for three or four months. He had been examined for a rupture prior to this time, was advised to wear a truss, but was told that he was not ruptured. This examination was in 1927.

It was admitted that at the time of the trial he was in a perfectly sound physical condition, and that he only claimed four months' disability.

He was injured on the 30th day of June, 1930, and had not worked on the 29th, 28th or 27th. The three days before the 27th, that is the 26th, 25th and 24th, he worked 10 hours a day. The evidence also shows that he did not work on Sunday, the 22nd.

Appellant, after his injury, when he was at the hospital, made a statement to Dr. Rollins. This statement was written out by Dr. Rollins, who then called in a notary public, had her to swear appellant to the statement. This statement was introduced in evidence, and the notary public testified that she was called in by Dr. Rollins, read the statement to appellant, and he signed it. The undisputed evidence shows that at the time he made the statement he was suffering excruciating pain, and he says that he simply said "yes" to what they asked him.

The trial court directed a verdict for appellee. Judgment was entered accordingly, and this appeal is prosecuted to reverse said judgment.

It is first contended by the appellant that the court erred in admitting the statement made by him to Dr. Rollins and the testimony of Miss Myrtle Shoemaker, the notary public.

The evidence of Dr. Rollins was clearly inadmissible under § 4149 of Crawford & Moses' Digest. He received his information while attending the appellant in a professional character, and of course he could not, over the objection, testify as to any information so received.

This court has said: "The purpose of § 3098 of Kirby's Digest is to cover the relation of doctor and patient with the cloak of confidence and thus to allow a greater freedom in their communications to each other in regard to matters touching the disease of the patient. Such statutes are enacted as a matter of public policy to prevent physicians from disclosing to the world the in-

firmities of their patients.'' *Mutual Life Ins. Co.* v. *Owen,* 111 Ark. 554, 164 S. W. 720.

This court in the same case quoted with approval the decisions of other courts holding that a physician who was requested by the attending physician to be present could not testify, and that a physician's partner could not testify as to a communication made in his presence.

In the case at bar the physician, Dr. Rollins, wrote the statement in pencil and then called the notary public, had her to type it, and then in the presence of the physician read it to appellant and witnessed his signature. Her testimony was no more competent than that of the physician.

If a physician could call any third person and disclose to such person his information and thereby enable her to testify, the statute would be of no effect. The physician could always evade the statute in this way.

In the case at bar, however, in addition to this, the undisputed evidence shows that the appellant was suffering so much pain that he did not know what they were doing.

It has been repeatedly held that other physicians either partners or physicians called in consultation, and present when the statement was made, could not testify; that the communication in their presence was privileged under the statute, and that it would be an evasion of the statute to permit evidence of facts thus obtained. *Ætna Life Ins. Co.* v. *Deming,* 123 Ind. 384, 24 N. E. 86 and 375; *Green* v. *Town of Nebagamain,* 113 Wis. 508, 89 N. W. 520. See notes 16 L. R. A. (N. S.) 888.

The appellant contends that the court erred in directing a verdict for the appellee.

Persons are prohibited by the statute from employing children under 18 years of age in any occupation to work more than the hours prescribed by the statute. Section 7091, Crawford & Moses' Digest.

If a child under 18 is injured while employed in violation of statute, he may recover damages from his em-

ployer. Statutes like the one involved here are enacted for the purpose of protecting the lives and limbs of children by prohibiting their employment in any occupation to work more than certain hours, and, if one is injured while employed in violation of such statutes, he is entitled to recover.

The evidence, however, in the case at bar, conclusively shows that appellant was not injured while the statute was being violated and shows that the violation of the statute was in no way connected with the injury. It is true that the evidence shows that the first week appellant was employed, beginning May 27, 1930, the statute was violated, but there is no evidence tending to show that it was violated at any time thereafter. The evidence shows that the appellant was injured on the 30th of June. On the 29th, 28th and 27th of June he testified that he did not work at all; that on the 26th, 25th and 24th he did not work more than 10 hours, and did not work on Sunday.

There is therefore no evidence tending to show that the injury resulted from a violation of the statute or that it was in any way connected with the violation of the statute.

The court said in one case: "If the negligence, whether *per se* or otherwise, does not proximately cause the injury, there can be no recovery on account of it. This brings us to the question of whether there was any causal connection between the disobedience of the statute and the injury. In short, was there any intervening cause?" *Terry Dairy Co.* v. *Nalley,* 146 Ark. 448, 225 S. W. 887, 12 A. L. R. 1208.

If appellant had been injured while the statute was being violated, the violation of the statute by the employer would not only be negligence, but would be the proximate cause of the injury, but it can not be said that the violation of the statute three weeks prior to the injury had any connection with the injury, or that there was any causal connection between the disobedience of the statute and the injury.

It is true that appellant says that working overtime previous to the date of his injury weakened his condition, and the strain of lifting excessive weights caused him to become ruptured, but there is no evidence that his long hours of labor the first week weakened his condition in any way. If he had been working in violation of the statute up to near the time of his injury and there was any evidence tending to show that this violation of the statute had any connection with the injury, it would then be a question of fact for the jury, even though he was not at the time of his injury being required to work in violation of law. If he had been working over hours the three weeks preceding his injury, then the fact that he was injured on Monday morning when it could not be said he was working over hours that week, could not prevent his recovery.

There must, in order for the injured party to recover, be some evidence that the prohibited working was the proximate cause of the injury. *Birmingham News Co.* v. *Andrews,* 204 Ala. 649, 87 So. 168; *Terry Dairy Co.* v. *Nalley,* 146 Ark. 448, 225 S. W. 887, 12 A. L. R. 1208.

The violation of the statute does not appear to be the proximate cause of the injury, and the judgment is therefore affirmed.